## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 12 2016, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Ann Johnson
Jane Harris Conley
Marion County Public Defender's Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas Dullen,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 12, 2016

Court of Appeals Case No.
49A05-1510-CR-1710

Appeal from the Marion Superior Court

The Honorable Christina R. Klineman, Judge

Trial Court Cause No.
49G17-1504-F6-12844

**Pyle, Judge.**

# Statement of the Case

Thomas Dullen ("Dullen") appeals his conviction, following a bench trial, for Level 6 felony intimidation.[1] Dullen argues that there was insufficient evidence to support his conviction. Concluding that Dullen's argument is merely a request to reweigh the evidence, we deny this request and affirm his intimidation conviction.[2]

We affirm.

# Issue

Whether sufficient evidence supports Dullen's intimidation conviction.

# Facts

Dullen and Laurina Manning ("Manning") dated for several years and had a child, D.D., together. In February 2015, Dullen and Manning were not living together, and Dullen had visitation with five-year-old D.D. every other weekend. For visitation purposes, they had a pre-arranged meeting spot at a specific gas station in Marion County to drop off and pick up D.D. for his scheduled visitations with Dullen. At that time, there was a no-verbal contact order in place between Dullen and Manning. Therefore, when making a visitation exchange, typically, both parents remained in their respective cars and

---

[1] IND. CODE § 35-45-2-1.

[2] Dullen was also convicted of Class A misdemeanor theft, but he does not challenge that conviction.

D.D. would get out of one parent's vehicle and walk over to the other parent's vehicle.

[4]     However, on February 15, 2015, Dullen violated the order and talked to Manning when he was returning D.D. to Manning in the gas station parking lot. Upon seeing Dullen walking over to her truck, Manning took out her cell phone and began a recording of him because of the no-contact order. Dullen opened Manning's back passenger-side door and put D.D. in Manning's vehicle. Dullen then "immediately began asking [her] for his paper." (Tr. 9). The paper was "in reference to his deceased grandmother, and some money." (Tr. 9). Dullen had previously accused Manning of taking the paper, and she had always informed that she did not have it. While Dullen was leaning in Manning's truck, he told her that he wanted his paper, and she again told him that she did not have it. Dullen continued to demand the return of his paper, and Manning—while continuing to record him—told him to get out of her car. Dullen told Manning that he was going to "take that 'M' effin' (sic) phone." (Tr. 10). When he reached to the front of the vehicle to grab Manning's phone, she dropped the phone on the floor. Manning leaned down to reach for her keys, and Dullen grabbed her keys that were hanging from the ignition. As he "yanked" the key ring, he broke Manning's ignition key and took the remaining keys, which included her house keys, her mother's house keys, and the key fob for her truck. (Tr. 12). Dullen stood by the back passenger door, argued with Manning, and yelled for her to get out of the truck and "come on around" to where he was standing. (Tr. 13). Manning refused, and Dullen eventually

drove away with her keys. Manning immediately called the police, talked to them at the gas station, and then drove to her mother's house.

[5] Later that day, Dullen called Manning's cell phone, and Manning's niece answered the phone and told Dullen to give the keys back. Manning grabbed the phone and hung up on Dullen. When Dullen called back, Manning answered the phone. Dullen told Manning that he would return her keys if she gave him his paper. Manning told Dullen that she did not have the paper, and he responded, "Now see, that's what makes me snap, because you want to play me like a fool. I know you got my paper." (Tr. 17). After Manning repeated that she did not have his paper, he said, "I'm going to tell you this, and you can take it any way you want to. If I don't get my paper back, our son is going to be an orphan." (Tr. 17). At trial, Manning testified that she "felt like he was threatening [her] life" and that she was "afraid that he [wa]s going to do something to [her]." (Tr. 17, 18). Manning "specifically asked [Dullen] if he was threatening [her,]" and he replied that she "could take it any way [she] want[ed] to." (Tr. 18). Manning hung up the phone and texted Dullen, instructing him to put her keys in her mailbox. Dullen never returned Manning's keys. Manning later contacted the police and changed her locks and her mother's locks.

[6]     Thereafter, the State charged Dullen with Count 1, Level 6 felony intimidation, and Count 2, Class A misdemeanor theft.[3] The trial court held a bench trial on August 4, 2015. Manning testified regarding the facts of the intimidation charge as described above. Following the State's presentation of evidence, Dullen moved for an involuntary dismissal of the intimidation charge, and the trial court denied the motion. Dullen then testified on his own behalf. He admitted that he had argued with Manning in her car about his paper, which he testified was a "paper that [his] grandma left [him]" and was worth "over a half of a million dollars[.]" (Tr. 24). Dullen accused Manning of "cash[ing] it in[,]" and he denied that he had taken Manning's keys.

[7]     The trial court found Dullen guilty as charged on both counts. The trial court imposed a 545 day sentence, with 180 days executed in Community Corrections and 365 days suspended to probation, for Dullen's intimidation conviction, and it imposed a 365 day sentence, with 26 days executed and 339 days suspended, for his theft conviction. The trial court ordered that the sentences were to run concurrently. Dullen now appeals his intimidation conviction.

---

[3] I.C. § 35-43-4-2.

# Decision

Dullen argues that the evidence was insufficient to support his intimidation conviction.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original).

The intimidation statute provides that a person who "communicates a threat to another person, with the intent . . . that the other person engage in conduct against the other person's will" commits intimidation as a Class A misdemeanor. I.C. §§ 35-45-2-1(a)(1). The offense is a Level 6 felony when the threat is to commit a forcible felony. I.C. §§ 35-45-2-1(b)(1). In order to convict Dullen of Level 6 felony intimidation as charged, the State was required to prove beyond a reasonable doubt that he communicated a threat to commit the forcible felony of murder, to Manning, with the intent that she engage in

conduct against her will, i.e., "to give [him] 'the paper[.]'" (App. 17). "[W]hether a defendant intended that someone engage in conduct against his or her will depends on the facts and circumstances of each case." *Owens v. State*, 659 N.E.2d 466, 474 (Ind. 1995) (citing *Hyde v. State*, 531 N.E.2d 472, 473 (Ind. 1988)), *reh'g denied*.

[10] Dullen challenges only the "threat" element of intimidation.[4] He seems to suggest that the evidence was insufficient to show that he made a threat because his words were not "direct" and were conveyed by telephone. (Dullen's Br. 9). He also suggests that his words did not constitute a threat because Manning did not immediately call the police after she hung up the phone with Dullen.

[11] The intimidation statute defines "threat" as an "expression, by words or action, of an intention to . . . unlawfully injure the person threatened . . . [or] commit a crime[.]" I.C. § 35-45-2-1(c)(1), (c)(3). Whether a particular communication constitutes a threat is an objective question for the trier of fact. *Owens,* 659 N.E.2d at 474. "'Written words or phrases take their character as threatening or harmless from the context in which they are used, measured by the common experience of the society in which they are published.'" *Brewington v. State*, 7 N.E.3d 946, 963 (Ind. 2014) (quoting *United States v. Prochaska,* 222 F.2d 1, 2 (7th Cir. 1955), *cert. denied*), *reh'g denied*, *cert. denied*. Thus, whether Dullen's

---

[4] He does not dispute that murder is a forcible felony.

communication to Manning, objectively viewed, was a threat was a question of fact for the trial court to decide.

[12] We first reject Dullen's suggestion that his words did not constitute a threat because he made them by telephone. "The text of the intimidation statute does not limit the phrase 'communicates a threat to another person' to only those threats made directly to or in the presence of the threatened party." *Ajabu v. State*, 677 N.E.2d 1035, 1042 (Ind. Ct. App. 1997), *trans. denied*. "The word 'communicate' encompasses those threats made known or transmitted to another person, and the statute does not limit the means utilized to convey the threat." *Id.* (explaining that "threats include those a person makes known to the victim through the print, radio[,] or television media with the requisite intent"). *See also* I.C. § 35-45-2-1(c) (providing that a person's communication of a threat "includes posting a message electronically, including on a social networking web site").

[13] Dullen's argument regarding the threat element is nothing more than a request to reweigh the evidence. Here, the evidence showed that Dullen had, earlier in the day, argued with Manning, accused her of taking his paper, struggled with her in an attempt to take her cell phone, and grabbed and stole her house keys and car key fob. He then phoned Manning and told her that if she did not give his paper back to him then their "son [wa]s going to be an orphan." (Tr. 17). Manning—who "felt like [Dullen] was threatening [her] life" and was "afraid that he [wa]s going to do something to [her]"—"specifically asked [Dullen] if he was threatening [her,]" and he replied that she "could take it any way [she]

want[ed] to." (Tr. 17, 18). Given the context in which the statement was made, the trial court could have reasonably concluded that Dullen's statement was an implied threat to commit a forcible felony against Manning if she did not give back his paper. We will not reweigh the evidence or the trial court's determination. *See Drane*, 867 N.E.2d at 146. Accordingly, we affirm Dullen's Level 6 felony intimidation conviction. *See, e.g.*, *Owens,* 659 N.E.2d at 474-75 (rejecting the defendant's argument that the evidence of a threat was insufficient because his words were "neither serious nor taken seriously" and finding no basis to disturb the jury's verdict).

[14] Affirmed.

Kirsch, J., and Riley, J., concur.